## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

Aaliyah Aguilo, et al.,

**Dispositive Motion**

                    Plaintiffs

v.                                    Case No.: 8:21-cv-2054-KKM-AEP

Cognizant Technology Solutions
U.S. Corporation,

                    Defendant.

_____/

## DEFENDANT'S MOTION TO DISMISS

Defendant Cognizant Technology Solutions U.S. Corporation ("Cognizant"), pursuant to Federal Rule of Civil Procedure 12(b)(6), moves for an order dismissing Plaintiffs' Complaint with prejudice because Plaintiffs have not stated and cannot state a claim for relief against Cognizant as a matter of law. This Court has already dismissed claims nearly identical to those asserted in this lawsuit, and nothing in this minimally revised pleading cures the legal deficiencies inherent in Plaintiffs' claims. Plaintiffs' claims should therefore be dismissed with prejudice.

## BACKGROUND

Until February 2020, Cognizant provided content moderation services for the social networking platform Facebook. (Doc. 1-3, ¶¶ 6, 60.) To provide those services, Cognizant employed individuals as content moderators to review material posted on Facebook to determine whether it violated Facebook's terms of use. (*Id.* ¶¶ 6, 11.) Plaintiffs were allegedly employed by Cognizant as Facebook content

moderators. (*Id.* ¶¶ 1, 11.) Plaintiffs claim they suffered injuries as a result of performing this work. (*Id.* ¶ 1.)

On February 5, 2020, certain of the Plaintiffs in this case[1] filed a putative class-action lawsuit against Cognizant and Facebook in state court that Cognizant removed to this Court. (*Garrett et al. v. Facebook, Inc., et al.*, Case No. 8:20-cv-00585 (M.D. Fla. 2020)) (the "First Lawsuit"). The plaintiffs in the First Lawsuit purported to represent all individuals employed by Cognizant to perform content moderation in Florida and Arizona, including all 131 named Plaintiffs in this case. *Garrett-Alfred v. Facebook, Inc.*, No. 8:20-CV-0585, 2021 WL 1946699, *1 (M.D. Fla. May 14, 2021); (Doc. 1-3, ¶ 11.)

In the First Lawsuit, the plaintiffs asserted claims against Cognizant for fraudulent concealment and violations of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"). *Garrett-Alfred,* 2021 WL 1946699, *4–5, 7–8. The plaintiffs claimed Cognizant failed to disclose the inherent dangers associated with content moderation and that the plaintiffs suffered from PTSD and other physical and psychological harms as a result of reviewing graphic content. *Id.* at *1–2, 9. The plaintiffs sought extensive damages from Cognizant for those injuries. *Id.* The plaintiffs also sought the establishment of a medical monitoring fund to pay for the diagnosis and treatment of certain conditions plaintiffs claimed were associated with PTSD. *Id.*

---

[1] Debrynna Garrett, Timothy Dixon, Jr., Lamond Richardson, Angela Cansino, Johnny Olden, Todd Alexander, Elton Gould, Lameka Dotson, Nicholas Collins, Reneal Eubanks, Tania Paul, Gabrielle Murrell, and Courtney Nelson.

Cognizant filed a motion to dismiss the First Lawsuit, which was granted by this Court on May 26, 2020. *Id.* at \*4–9; *Garrett et al. v. Facebook, Inc., et al.*, Case No. 8:20-cv-00585 (M.D. Fla. 2020) (Doc. 35). The Court dismissed the FDUTPA claim with prejudice and the fraudulent concealment claim without prejudice. 2021 WL 1946699, at \*4–8. Since medical monitoring was not alleged as a separate count, there was no formal dismissal of a medical monitoring claim. But the Court stated that medical monitoring may not be applicable to the facts and the elements of medical monitoring were not adequately alleged. *Id.* at \*9.

Rather than seek leave to amend their complaint in the First Lawsuit, Plaintiffs filed this lawsuit in the Thirteenth Judicial Circuit, in and for Hillsborough County, Florida, on July 27, 2021. Plaintiffs are no longer asserting a class action. Instead, 131 of the individuals who fall within the class definition in the First Lawsuit have jointly asserted claims that are virtually identical to those this Court has already dismissed: a fraudulent concealment claim and a standalone claim for the establishment of a "Medical Monitoring" fund. (*Id.* at ¶¶ 63–92.) Cognizant removed the case to this Court on August 25, 2021, by filing its Notice of Removal. (Doc. 1.)

## INTRODUCTION

Plaintiffs' claims are subject to dismissal because they have not cured any of the defects the Court already identified in the First Lawsuit. Yet again, Plaintiffs have failed to allege fraud with the requisite particularity required by Federal Rule of Civil Procedure 9(b). Plaintiffs continue to fail to plead the who, what, when,

and where of their claims. Notably, although this lawsuit is asserted on behalf of 131 different individuals, the claims are pled generally as if it were still a class action. Plaintiffs' complaint provides no specific facts associated with each (or any) of the individual Plaintiffs, let alone specific misrepresentations or omissions by Cognizant upon which *any* Plaintiff reasonably relied. This falls far short of the standard required to allege a fraud claim.

Even if Plaintiffs could meet this threshold requirement, their theory of liability is fundamentally flawed and not viable as a matter of Florida law. Just as in the First Lawsuit, Plaintiffs' theory is that Cognizant failed to disclose vague and non-specific "dangers" associated with reviewing graphic images as part of Plaintiffs' job, and that Plaintiffs suffered "serious psychological and physical injuries" as a result. (Doc. 1-3, ¶ 1.)

While they have made certain minor changes to the Complaint, no amount of wordsmithing warrants a different result from the Court's dismissal of the First Lawsuit. *Garrett-Alfred*, 2021 WL 1946699. As the Court stated in dismissing the nearly identical fraud claim in the First Lawsuit, "[u]nder Plaintiffs' theory, an employer would be liable for failing to disclose every obvious danger to which an employee might be exposed prior to hiring." *Id.* at *5. Florida law does not impose liability under these circumstances. Plaintiffs do not allege any facts whatsoever that could support a claim for relief under the theory alleged.

Finally, Plaintiffs' attempt to recover under a medical monitoring claim — a claim designed for mass tort actions where plaintiffs have been exposed to toxic

substances — simply does not work. Plaintiffs have not been exposed to any toxic substances, which is the most basic requirement of a medical monitoring claim. Plaintiffs have also failed to allege the remaining elements of a medical monitoring claim because the facts here do not fit within that rubric. Plaintiffs' claim cannot succeed as a matter of law and must be dismissed.

For these reasons, Plaintiffs' Complaint should be dismissed with prejudice.

## LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While leave to amend is usually freely given, it is not required when amendment would be futile. *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## ARGUMENT

Plaintiffs have not stated a plausible claim against Cognizant. Plaintiffs have failed to allege their fraud claim with requisite particularity. More importantly, Plaintiffs' allegations fail to state a viable claim for fraud as a matter of law. Plaintiffs have also failed to properly allege a claim for medical monitoring since medical monitoring does not apply under these circumstances and in any event the elements of medical monitoring are not properly pled. Because any further

amendment of these claims would be futile, the Complaint should be dismissed with prejudice.

## I.   Plaintiffs have Failed to State a Claim for Fraud.

In Count I, Plaintiffs attempt to assert a claim for deliberate fraudulent concealment, which sounds in fraud. *Garrett-Alfred*, 2021 WL 1946699, *4. Plaintiffs argue that Cognizant failed to disclose harm associated with reviewing graphic content, which was Plaintiffs' job as content moderators. (Doc. 1-3, ¶¶ 1, 14.) But Plaintiffs have not stated their fraud claim with the particularity required by Rule 9(b) because they fail to plead the "who, what, where, when, and how" of the claim and instead traffic in broad generalities. Moreover, Plaintiffs have not and cannot state a valid fraud claim (regardless of whether they can correct their pleading errors) because the duties and liabilities they seek to impose are not supported by Florida law. Since Plaintiffs cannot remedy these flaws, this claim should be dismissed with prejudice.

### A.   Plaintiffs' fraud claim lacks the particularized allegations required to satisfy Rule 9(b).

Allegations of fraud are subject to a heightened pleading standard. *See* Fed. R. Civ. P. 9(b). Rule 9(b) applies to claims of fraudulent concealment, fraudulent misrepresentation, and negligent misrepresentation. *Garrett-Alfred*, 2021 WL 1946699, *4; *Koski v. Carrier Corp.*, 347 F. Supp. 3d 1185, 1196-97 (S.D. Fla. 2017) (asserting claims under Florida law). Claimant "must state with particularity the circumstances constituting fraud or mistake." *See* Fed. R. Civ. P. 9(b).

To satisfy the heightened pleading standard in Federal Rule of Civil Procedure 9(b), Claimant must allege:

1. Precisely what statements were made in what documents or oral representations, or what omissions were made, and

2. The time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) the same, and

3. The content of such statements and the manner in which they misled the plaintiff, and

4. What the defendants obtained as a consequence of the fraud.

*Garrett-Alfred*, 2021 WL 1946699, *4; *In re Galectin Therapeutics, Inc. Secs. Litig.*, 843 F.3d 1257, 1269 (11th Cir. 2016). In other words, Plaintiffs must "plead the who, what, when, where, and how" of the allegedly fraudulent statements or omissions. *Aprigliano v. Am. Honda Motor Co.*, 979 F. Supp. 2d 1331, 1342 (S.D. Fla. 2013) (citing *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008)).

### i.   *Plaintiffs failed to plead fraudulent concealment with particularity.*

To survive dismissal, each Plaintiff must allege with particularity that Cognizant: (1) concealed or failed to disclose a material fact; (2) knew or should have known the material fact should be disclosed; (3) knew that concealing or failing to disclose the material fact would induce that Plaintiff to act; (4) had a duty to disclose the material fact; and each Plaintiff must also allege (5) that he or she

detrimentally relied on the misinformation. *See Hess v. Philip Morris USA, Inc.*, 175 So. 3d 687 (Fla. 2015). Plaintiffs have not pleaded these elements.

      a.    <u>Plaintiff's General Allegations do not satisfy Rule 9(b).</u>

In the First Lawsuit, this Court found nearly identical claims failed to satisfy the Rule 9(b) heightened pleading standard, noting that the plaintiffs did "not allege specific information related to the dangers of content moderation that Cognizant withheld like, for example, safety reports." *Garrett-Alfred*, 2021 WL 1946699, at *5. In other words, Plaintiffs must allege a specific material fact that Cognizant supposedly concealed rather than alluding to broad concepts like "dangers." *Id.* They have not done so. Instead, Plaintiffs allege only that Cognizant failed to warn of "dangerous working conditions" and "inherent dangers," without identifying any specific facts or specific information that Cognizant was allegedly required to disclose. These allegations remain utterly "conclusory" and fail to satisfy Rule 9(b).

Instead of alleging material facts Cognizant failed to disclose, Plaintiffs allege several actions Cognizant failed to undertake — for example, provide "its new hires a disclaimer before starting work," discuss with employees their "level of comfort" with the subject matter, provide "follow-up counseling sessions" for content moderators, or permit employees to "'opt-out' from viewing certain types of imagery." (Doc. 1-3, ¶ 39-42.) None of these allegations describe failures to disclose a specific material fact. Plaintiffs still fail to identify the material facts that

were allegedly omitted, "like, for example, safety reports." *Garrett-Alfred*, 2021 WL 1946699, at *5.

In addition, Plaintiffs still fail to allege the "who, when, where, and how" portions of their claim. For example, Plaintiffs allege that Cognizant "downplayed" how "extreme" the content was that they would review. (Doc. 1-3, ¶ 42.) But Plaintiffs do not allege who downplayed the extreme content, what they said, and when they said it. Plaintiffs generally allege that "in making their decisions regarding obtaining or retaining employment" with Cognizant, "Plaintiffs relied on information that was false and/or materially incomplete due to the (sic) Cognizant's deliberate concealment of, omission of, failure to disclose, or misrepresentation of information as described in the preceding paragraphs." (Doc. 1-3, ¶ 68.) But Plaintiffs do not allege when they each individually made their decision to work for Cognizant or when they each individually decided to remain there. (*Id.* at ¶ 56.) Instead, there are no allegations at all that are specific to any individual Plaintiff.

Nor do Plaintiffs allege the where and how of the fraud. Plaintiffs do not allege, for example, what they were told by Cognizant about the job or any other facts providing the context required by Rule 9(b). Merely alleging that Cognizant provided "information" that was "false or incomplete" is insufficient. *Garrett-Alfred*, 2021 WL 1946699, at *5 ("'Bare contentions' that Cognizant concealed from the Plaintiffs the dangers of content moderation are not enough, particularly when

those allegations fail to identify who should have warned them, when they should have been warned, and where they should have been warned.")

        b.    <u>The NDA does not support a fraud claim.</u>

Plaintiffs attempt to rely on a Non-Disclosure Agreement ("NDA") that Plaintiffs purportedly signed to allege fraud, claiming Cognizant used the NDA to "intentionally prevent" them from discussing their "psychological trauma with others." (Doc. 1-3, ¶ 47). This Court previously held allegations about the NDA were insufficient to state a claim. *Garrett-Alfred*, 2021 WL 1946699, at *5. The NDA fails to state a fraud claim because the NDA, a copy of which is attached as Exhibit "1,"[2] does not contain the restrictions Plaintiffs allege. Instead, the NDA contains standard language prohibiting Cognizant employees and former employees from disclosing "Confidential Information" obtained during their employment, which includes "information that has or could have commercial value" to Cognizant, or information "detrimental" to Cognizant's interests. (Ex. 1 § 1.1.) The NDA also specifically excludes from its purview "information that is or has become widely known to the public other than through" unauthorized disclosure. (Ex. 1 § 1.3.)

Plaintiffs' individual mental health and personal experiences reviewing content are not Confidential Information under the NDA. Section 1.3 of the NDA

---

[2] The Court may consider the NDA attached to this Motion because it is specifically referenced in Plaintiffs' Complaint and central to their allegations. *See Certain Underwriters at Lloyd's London v. BE Logistics, Inc.*, 736 F. Supp. 2d 1311, 1314 (S.D. Fla. 2010) ("In analyzing the sufficiency of the complaint, the Court may consider documents "central to or referenced in the complaint."). A "court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed. In this context, "undisputed" means that the authenticity of the document is not challenged." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

provides an extensive list of examples of Confidential Information, which includes information typically considered to have commercial value, such as "business plans," "budgets," "customer, vendor, and supplier lists," "marketing tools," and related materials. (Ex. 1 § 1.3.) Nothing in the NDA even remotely suggests that Plaintiffs were prohibited "from discussing their work or seeking outside social support" from anyone, let alone "mental health counselors, psychologists, doctors, spouses, parents, family members, [or] clergy," as Plaintiffs allege. (Doc. 1-3, ¶ 47.)

And even if details regarding content moderation or its potential effect on the mental health of content moderators were considered Confidential Information under the NDA, that information was "widely known to the public" at the time Plaintiffs were employed by Cognizant and therefore outside the scope of the NDA. *See infra* p. 17. The Court should reject Plaintiffs' attempt to read inherently unreasonable restrictions into the NDA to support their fraud claim.

Plaintiffs also fail to allege that the NDA actually prohibited them from learning the information they claim was concealed. Plaintiffs' purported inability to speak to their family or clergy about their mental trauma does not in any way support a fraud claim here since that alleged "concealment" has no connection to allegations that Cognizant concealed the harms of content moderation from Plaintiffs. Nothing in the NDA precluded Cognizant or its employees from disclosing any information about content moderation or its alleged "dangers" to other employees at Cognizant. Plaintiffs' reliance on the NDA is nothing more than an attempt to hide their inability to plead specific facts to support their claims.

Plaintiffs also allege that Cognizant "instruct[ed] [its] employees not to speak about the content or workplace conditions to anyone outside their review team." (Doc. 1-3, ¶ 47.) But Plaintiffs completely fail to plead the "who, what, when, where, and how" of this allegation, as required to avoid dismissal under Rule 9(b). *See Aprigliano*, 979 F. Supp. 2d at 1342. The Court should disregard Plaintiffs' conclusory allegations and misguided contentions about the NDA. *See Garrett-Alfred*, 2021 WL 1946699, at *5 (dismissing claims based on same NDA).

Plaintiffs' fraud claim is substantially identical to the claims already rejected by the Court in the First Lawsuit. There, the Court explained that "'bare contentions' that Cognizant concealed . . . the dangers of content moderation are not enough, particularly when those allegations fail to identify who should have warned them, when they should have been warned, and where they should have been warned." *Id*. at *5. Plaintiffs' allegations still amount to "legal conclusions rather than empirically provable facts" and fail to state a claim. *Id*. (quoting *Douse v. Boston Scientific Corp*., 314 F. Supp. 3d 1251, 1263 (M.D. Fla. 2018)).

> ii.     *Plaintiffs failed to plead a fraudulent misrepresentation.*

While Plaintiffs' Complaint focuses largely on their defective fraudulent concealment claim, Plaintiffs also allege in conclusory fashion that Cognizant made unspecified misrepresentations. (Doc. 1-3, ¶ 62.) To the extent Plaintiffs are attempting to state a claim for fraudulent misrepresentation, this claim is also inadequately pled. A claim for fraudulent misrepresentation requires Plaintiffs to properly allege that: (1) Cognizant made false statements concerning material

facts; (2) Cognizant had knowledge that the representations were false; (3) Cognizant intended that the representations induce Plaintiffs to act on them; and (4) consequent injury suffered by Plaintiffs acting in reliance on the representations. *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010). Plaintiffs have not alleged any affirmative misrepresentation by Cognizant, much less that they relied on any purported misrepresentation.

Plaintiffs only allege that Cognizant misrepresented the content moderator position "through advertisements" describing the content moderator job as "a prestigious career in high technology that simply required new hires to become knowledgeable about 'leading social media products and community standards' to 'assist our community and help resolve inquiries emphatically, accurately, and on time,' and to 'make well balanced decisions and [be] personally driven to be an effective advocate of our community.'" (Doc. 1-3, ¶ 44.) This bare allegation does not allege the "who, what, when, where, and how" of the purported misrepresentation. *See Aprigliano*, 979 F. Supp. 2d at 1342. Plaintiffs fail to allege where and when this advertisement was placed, whether they relied upon it, or even whether they saw it before accepting employment with Cognizant—or ever.

Nor do Plaintiffs allege any facts to support their contention that these advertisements were false or that Cognizant knew they were false. For these reasons, the Court has already found these exact allegations insufficient to satisfy rule 9(b). *See Garrett-Alfred*, 2021 WL 1946699, at *6 n.4 ("Plaintiffs do not allege

how [the advertisement was] false, that Cognizant knew it was false, or that they materially relied on it when accepting employment with Cognizant.").

**B.    Plaintiffs fail to allege a viable fraud claim.**

Plaintiffs' failure to plead their fraud claim with specificity does not merely represent a failure to jump through procedural hoops, but instead stems from the inherent substantive defects in Plaintiffs' claim. Plaintiffs have not alleged a specific fraud claim because they cannot do so. First, the risks Plaintiffs claim Cognizant should have disclosed are not actionable because they are both obvious and easily discoverable through the exercise of reasonable diligence. Any failure to disclose those risks cannot support a fraudulent concealment claim as a matter of law. Second, Plaintiffs have not and cannot plead a duty to disclose — a required element of a fraudulent concealment claim. Each of these independent failures requires dismissal of Plaintiffs' complaint with prejudice.

*i.    Plaintiffs fail to allege a viable fraud claim.*

Plaintiffs cannot allege a viable fraud claim as a matter of law. "[D]etermining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). The Court previously recognized the flaw fundamental in Plaintiffs' claim — accepting the plaintiffs' theory would mean that any employer "would be liable for failing to disclose every obvious danger to which an employee might be exposed prior to hiring." *Garrett-Alfred*, 2021 WL

1946699, at *5. As the Court has already found, Florida law does not support this theory. *Id.*

In an obvious attempt to avoid dismissal on these same grounds in this lawsuit, Plaintiffs have removed their prior allegation that it was "well known" that exposure to images of graphic violence can cause injury. *See Garrett-Alfred*, 2021 WL 1946699, at *5. This type of gamesmanship is improper.[3] Furthermore, Plaintiffs' removal of their prior admission does not make the information they now claim was not disclosed any less obvious or "well known."

First, Plaintiffs make no specific allegation that would allow the Court to reasonably conclude that they are less capable of comprehending and understanding information than other member of the public. Nor do Plaintiffs allege they were unaware of what content moderation entailed or that they did not understand their job would be to review graphic and disturbing images.[4] These omissions foreclose Plaintiffs' claim because it does not take any specialized knowledge or information to understand that reviewing graphic and disturbing images on a daily basis could negatively impact mental health. The general

---

[3] *See Marchelletta v. Bergstrom*, No. 1:14-cv-02923, 2017 WL 5505301, at *2 (N.D. Ga. Feb. 15, 2017) ("Although parties may plead alternative or inconsistent legal theories, the federal rules do not allow parties to litigate the merits of their factual contentions and then change those factual contentions upon receiving an unfavorable decision."); *Rubinstein v. Keshet Inter Vivos Trust*, No. 17-61019-CIV, 2017 WL 7796306, at *3 (S.D. Fla. Nov. 1, 2017) ("As a general rule, 'a plaintiff may not plead facts in their amended complaint that contradict those in their original complaint.'").

[4] Plaintiffs allege Cognizant "downplayed" how "extreme" the content was, but do not allege how Cognizant did so. (Doc. 1-3, ¶ 42.) Nor do Plaintiffs allege that they did not understand the types of images they would be reviewing.

populace holds this type of knowledge and it does not require explanation or disclosure.

For example, the potential connection between reviewing graphic or disturbing images and psychological harm is the reason we have rating standards for movies and television shows, why there is a large and well-established movement to ban violent video games, and why social media platforms like Facebook have terms of use and need content moderators in the first place. Plaintiffs' claim that they took a job requiring them to review and remove content that Facebook deemed harmful for public viewing from its site without understanding that *their own* review of that content could be harmful is inherently implausible. Plaintiffs did not need any disclosures to understand that a job requiring constant review of disturbing and violent images could be harmful.

Plaintiffs also rely on publicly available data and studies for the proposition that Cognizant knew about unspecified "dangers" of content moderation. (Doc. 1-3, ¶¶ 17–21.) These allegations doom Plaintiffs' claim because these purported dangers were "fully accessible to them through due diligence." *Garrett-Alfred*, 2021 WL 1946699, at *5. While Plaintiffs now claim the public studies were not "known or readily available to like (sic) Plaintiffs," they fail to explain why or how these publicly available studies were not readily available to them. (Doc. 1-3, ¶ 16.) This conclusory allegation is directly contradicted by the fact that the studies are publicly available.

Furthermore, a simple google search for information about the position each Plaintiff was considering would have revealed significant amounts of information about the realities and dangers of content moderation, including news articles, documentary films, books, and lawsuits. For example, such a search would have returned numerous news articles, including articles with titles such as "Facebook is hiring moderators. But is the job too gruesome to handle?"[5] (May 4, 2017); "The Companies Cleaning the Deepest, Darkest Parts of Social Media"[6] (June 26, 2018), "Undercover report shows the Facebook moderation sausage being made"[7] (July 17, 2018), "Think you know how bad Facebook's extreme content moderation is? It's way worse"[8] (July 18, 2018), and "Platform Moderation and Its Discontents"[9] (August 10, 2018). This Court may take judicial notice of this publicly available information.[10]

Nothing about content moderation or its purported dangers was a secret when Plaintiffs accepted their jobs with Cognizant. Rather, all of the information Plaintiffs now claim was "concealed" by Cognizant was easily accessible to them in the public domain. Because, as a matter of law, "[f]acts are not deliberately

---

[5] https://www.theguardian.com/technology/2017/may/04/facebook-content-moderators-ptsd-psychological-dangers

[6] https://www.vice.com/en/article/ywe7gb/the-companies-cleaning-the-deepest-darkest-parts-of-social-media

[7] https://techcrunch.com/2018/07/17/undercover-report-shows-the-facebook-moderation-sausage-being-made

[8] https://www.wired.co.uk/article/facebook-moderation-policy-dispatches-britain-first

[9] https://lareviewofbooks.org/article/platform-moderation-and-its-discontents

[10] *Chapman v. Abbott Labs.*, 930 F. Supp. 2d 1321, 1323 (M.D. Fla. 2013). *Absolute Activist Value Master Fund Ltd. v. Devine*, 233 F. Supp. 3d 1297, 1317 (M.D. Fla. 2017) (taking judicial notice of existence of news articles).

concealed when they were reasonably accessible to plaintiffs," none of the Plaintiffs can state a claim for fraud. *Garrett-Alfred*, 2021 WL 1946699, at *5.

    *ii. Plaintiffs fail to allege a duty to disclose.*

Plaintiffs' claim also fails because they have not and cannot adequately allege a duty to disclose. "Fraud based upon a failure to disclose material information exists only when there is a duty to make such a disclosure. The threshold question of whether one has a duty to disclose is a matter of law to be decided by the court." *Pritchard v. Levin*, 305 So. 3d 628, 630 (Fla. 3d DCA 2020) (internal citations omitted). Florida law simply does not recognize a duty to disclose in this case. *See Garrett-Alfred*, 2021 WL 1946699, at *6.

Plaintiffs attempt to manufacture a duty by alleging that Cognizant's duty to disclose arose from Cognizant's contract with Facebook, to which Plaintiffs allege they were "intended beneficiaries" (*Id.* at ¶ 35), and from common law duties set out in certain Restatements of employment and agency law and OSHA regulations. (*Id.* at ¶¶ 36, 37). These allegations fail to allege a duty as a matter of law.

First, the duty required must involve a "special relationship that gives rise to a duty to speak." *Regions Bank v. Kaplan*, No. 8:12-CV-1837, 2014 WL 5088889, *4 (citing *TransPetrol, Ltd. v. Radulovic*, 764 So. 2d 878 (Fla. 4th DCA 2000)). Rather than describe a special relationship between Plaintiffs and Cognizant, Plaintiffs rely on the contractual relationship between Facebook and Cognizant. This is not the type of special relationship required. There is no authority in Florida supporting Plaintiffs' position that Cognizant's alleged contractual obligations to a

third party creates a special relationship with Plaintiffs such that Cognizant owed *Plaintiffs* a duty.

Even if Plaintiffs could rely on the contractual relationship between Cognizant and Facebook, they have not sufficiently alleged they were intended beneficiaries of that contract. To be intended beneficiaries, the goal of the contract must be to "primarily and directly benefit" Plaintiffs. *See Williams v. CVT, LLC*, 295 So. 3d 883, 887 (Fla. 2d DCA 2020). Plaintiffs cannot allege that a business contract for services between Cognizant and Facebook was "intended to primarily and directly benefit" Plaintiffs. (Doc. 1-3, ¶ 12.)

Moreover, Plaintiffs have not tied any supposed duty arising out of the Facebook/Cognizant contract to their fraud claim. While Plaintiffs allege in conclusory fashion that Facebook informed Cognizant of the "dangers" of content moderation and "required Cognizant . . . to notify employees of the dangers of content moderation," they provide no specific allegations describing what facts Cognizant was required to disclose, who was required to warn Plaintiffs, when Cognizant was required to warn Plaintiffs, or how and where these warnings were to take place. (Doc. 1-3, ¶ 23.) These conclusory allegations about "dangers" cannot support a fraud claim. *See Garrett-Alfred*, 2021 WL 1946699, at *5.

Further, no Florida court has ever cited the Restatement provisions or OSHA regulations identified by Plaintiffs, much less cited them as a basis to establish an employer's "common law duty" of disclosure of possible mental and emotional harms to its employees. To the contrary, this Court has already considered these

same allegations and found a duty to disclose was lacking. *Garrett-Alfred*, 2021 WL 1946699, at *6; Plaintiffs' Memorandum of Law in Opposition to Cognizant's Motion to Dismiss, at 9–10, *Garrett et al. v. Facebook, Inc., et al.*, Case No. 8:20-cv-00585 (M.D. Fla. 2020) (Doc. 55).

Florida law simply does not require employers to warn of the risks of psychological harm. Content moderation is not the only job that allegedly subjects individuals to trauma, including exposure to disturbing images or events. Yet there is not a single statute, case, or other legal authority in Florida requiring employers to disclose risks of physiological or emotional harm to employees, nor any precedent for imposing liability on employers when employees allegedly suffer these harms. For example, it is well-established that attorneys suffer higher rates of mental illness, divorce, substance abuse, and suicide. Yet, employers of attorneys have no duty to disclose these potential harms to attorneys applying for positions. There is no basis to impose liability for fraud under the facts alleged by Plaintiffs. Plaintiffs' fraud claim should be dismissed with prejudice.

## II.   <u>**Plaintiffs have Failed to State a Claim for Medical Monitoring.**</u>

Count II of the Complaint asserts a stand-alone claim for medical monitoring. Plaintiffs' claim fails as a matter of law because (1) medical monitoring does not apply to the type of claim Plaintiffs have asserted and (2) Plaintiffs fail to adequately allege the elements of a medical monitoring claim under Florida law. Since Plaintiffs cannot allege a claim for medical monitoring as a matter of law, the Court should dismiss Count II with prejudice as well.

"Florida allows courts to establish medical monitoring schemes in some mass tort actions before the party seeking relief has developed identifiable injuries." *Garrett-Alfred*, 2021 WL 1946699, at *9. These claims are appropriate "where plaintiffs have diagnosable health conditions resulting from exposure to hazardous substances or medical products." *Id.* (citing *Wyeth, Inc. v. Gottlieb*, 930 So. 2d 635 (Fla. 3d DCA 2006)); *Petito v. A.H. Robins Co.*, 750 So. 2d 103, 104 (Fla. 3d DCA 1999).

Medical monitoring cases almost exclusively deal with toxic and hazardous substances that cause serious latent diseases (like cancer) that require active medical monitoring to detect. *See id.* (collecting cases). Here, Plaintiffs do not allege any exposure to any hazardous substance. There is no Florida case supporting the proposition that Plaintiffs could maintain a claim for medical monitoring as a result of mental health conditions resulting from their employment.

But even if there were, Plaintiffs have not alleged the necessary elements. A medical monitoring claim requires "(1) exposure greater than normal background levels; (2) to a proven hazardous substance; (3) caused by the defendant's negligence; (4) as a proximate result of the exposure, plaintiff has a significantly increased risk of contracting a serious latent disease; (5) a monitoring procedure exists that makes the early detection of the disease possible; (6) the prescribed monitoring regime is different from that normally recommended in the absence of the exposure; and (7) the prescribed monitoring regime is reasonably necessary

according to contemporary scientific principles." *Wyeth*, 930 So. 2d at 640. Improperly alleged claims for medical monitoring can and should be dismissed. *See Grayson v. Lockheed Martin Corp.*, No. 6:20-CV-1770, 2021 WL 2873465, at *2 (M.D. Fla. May 13, 2021) (dismissing medical monitoring claim for failure to state a claim); *Gibson v. Lapolla Indus., Inc.*, No. 6:13-CV-646, 2014 WL 12617007, at *3 (M.D. Fla. Jan. 31, 2014) (same).

Plaintiffs fail to adequately allege the first and second elements of their claim because, as stated above, they have not alleged that Plaintiffs were exposed to any hazardous "substance," let alone exposed to such a substance beyond normal background levels. A substance is by definition a physical material, and normal background levels refer to the amount of physical substances normally found in the environment. *See Coffie v. Florida Crystals Corp.*, 460 F. Supp. 3d 1297, 1313 (S.D. Fla. 2020).

Plaintiffs also fail to allege their exposure to harmful images resulted from Cognizant's negligence, nor could they.[11] Rather, Plaintiffs claim only that they were exposed to "PTSD inducing stressors" as an expected and normal part of their job. (Doc. 1-3, ¶ 74.) Because Plaintiffs have not alleged negligence and they are unable to do so, this element cannot be established.

---

[11] "The impact rule, which is well established in [Florida], requires that 'before a plaintiff can recover damages for emotional distress caused by the negligence of another, the emotional distress suffered must flow from physical injuries the plaintiff sustained in an impact.'" *Garrett-Alfred*, 2021 WL 1946699, at *7 (citing S. Baptist Hosp. of Fla., Inc. v. Walker, 908 So. 2d 317, 320 (Fla. 2005)).

Plaintiffs also fail to allege the final four elements of a medical monitoring claim. Plaintiffs do not identify any specific disease they have a "significantly increased risk" of contracting. They allege only that they have a significantly increased risk of contracting "a serious latent disease." (*Id.* ¶ 75.) Plaintiffs' recitation of certain symptoms and disorders linked to PTSD, some of which are not even diseases, are insufficient to state a claim because there is no corresponding allegation that any of these illnesses are caused by content moderation or that Plaintiffs are at a significantly increased risk of developing these diseases. Most importantly, Plaintiffs fail to allege that there is a monitoring procedure for detecting any purported "latent disease" specific to content moderation that requires early detection. They allege only general information about PTSD.  But because Plaintiffs claim they already have PTSD and C-PTSD, these cannot be the diseases for which Plaintiffs require monitoring. (*Id.* ¶ 59.)

Finally, Plaintiffs fail to identify a specific monitoring procedure or allege any facts describing how that procedure is "different from that normally recommended in the absence of exposure." (*Id.* ¶¶ 76, 81, 85.) Plaintiffs' general allegations about the nature and treatment of PTSD fall far short of the requirements for pleading a medical monitoring claim. *See Grayson*, 2021 WL 2873465, at *2 (dismissing medical monitoring claim where plaintiff cited reports with general information about the substance's toxicity, adverse health effects, and recommendations for determination exposure, but did not "provide information

on how to monitor latent diseases, how the[] methods would differ from normally prescribed monitoring, and if the monitoring methods are reasonably necessary").

Medical monitoring has been limited in Florida to mass toxic tort cases and there is no precedent for applying that equitable claim here. Nor have Plaintiffs alleged the elements of such a claim beyond conclusory allegations. Plaintiffs cannot cure these failures. As a result, the Court should dismiss Count II with prejudice for failure to state a claim.

## CONCLUSION

Plaintiffs' Complaint fails to state a claim under Florida law. Because Plaintiffs cannot salvage their claims through amendment, their Complaint should be dismissed with prejudice.

Dated: September 27, 2021   Respectfully submitted,

         *s/* Dennis P. Waggoner
         Dennis P. Waggoner (FBN 509426)
         dennis.waggoner@hwhlaw.com
         julie.mcdaniel@hwhlaw.com
         Tori C. Simmons (FBN 107081)
         tori.simmons@hwhlaw.com
         tricia.elam@hwhlaw.com
         HILL, WARD & HENDERSON, P.A.
         101 E Kennedy Boulevard, Suite 3700
         Tampa, FL 33602
         Telephone:  813-221-3900
         Facsimile:  813-221-2900
         *Attorneys for Defendant Cognizant*
         *Technology Solutions U.S. Corporation*