UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


AALIYAH AGUILO et al.,

      Plaintiffs,

v.                           Case No: 8:21-cv-2054-KKM-AEP

COGNIZANT TECHNOLOGY
SOLUTIONS U.S. CORPORATION,

      Defendant.

_____

## ORDER

Defendant Cognizant Technology Solutions U.S. Corporation moves to dismiss Plaintiffs' claims against it for fraudulent concealment or fraudulent misrepresentation and medical monitoring based on Plaintiffs' prior employment with Cognizant as content moderators for Facebook. (Doc. 12.) Plaintiffs oppose Cognizant's motion to dismiss. (Doc. 15.)

In an earlier case brought by thirteen of the 131 Plaintiffs in this case, those plaintiffs brought a putative class action against Cognizant and Facebook alleging fraudulent concealment or fraudulent misrepresentation as well as negligence and a claim under the Florida Deceptive and Unfair Trade Practices Act (FDUPTA). Due to pleading deficiencies, the earlier putative class action was dismissed. *See Garrett-Alfred v. Facebook,*

*Inc.*, 540 F. Supp. 3d 1129 (M.D. Fla. 2021) (Mizelle, J.). Rather than seek leave to amend in the prior action, those thirteen Plaintiffs joined with additional former content moderators and filed this new action in state court, this time alleging claims only for fraudulent concealment or fraudulent misrepresentation and medical monitoring against Cognizant. After timely removing to federal court, Cognizant moves to dismiss based on similar pleading defects as the first complaint.

Although Plaintiffs cured some of the pleading deficiencies in this second action, they have not remedied all of them, thereby necessitating the Complaint's dismissal.

## I.   BACKGROUND[1]

Based on a written contract, Cognizant provided content moderation services to Facebook. (Doc. 1-3 ¶¶ 6, 60.) Those services involved reviewing media content reported by Facebook's users and removing any content that violated Facebook's terms of use—in other words, moderating Facebook's content. (*Id.* ¶¶ 10–11.) While content moderation can be done either electronically using algorithms or through human review, Cognizant provided the latter kind. (*Id.* ¶ 11.)

To determine if the content violated Facebook's terms of use, Cognizant's content moderators reviewed large amounts of graphic and vile content posted on Facebook—such as murders, tortures, child pornography, and rapes. (*Id.* ¶¶ 9, 11.) Early in 2020,

---

[1] The Court treats the factual allegations in Plaintiff's Complaint as true and construes them in the light most favorable to them. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

Cognizant shut down its operations, including its Tampa location, and terminated all its content moderators. (*Id.* ¶ 61–62.)

On February 5, 2020, thirteen former Cognizant content moderators filed a putative class action against both Cognizant and Facebook in state court, which Cognizant then removed to federal court. *See Garrett-Alfred v. Facebook, Inc.*, No. 8:20-cv-0585 (M.D. Fla. 2020). The plaintiffs in that action, who purported to represent a class of all Cognizant-employed content moderators in Florida and Arizona, alleged that Cognizant failed to disclose the inherent dangers associated with content moderation and that the plaintiffs suffered from PTSD and other physical and psychological harms from reviewing large amounts of graphic content. *See Garrett-Alfred*, 540 F. Supp. 3d at 1134–35.

The plaintiffs in that first action asserted claims against Cognizant for fraudulent concealment or fraudulent misrepresentation and for violating FDUPTA. The Court dismissed the plaintiffs' FDUPTA claim with prejudice and the fraudulent concealment or fraudulent misrepresentation claim without prejudice. *See id.* at 1144. While the plaintiffs did not bring a separate medical monitoring claim, the dismissal order explained that, even if they had separately alleged a medical monitoring claim, the claim was most likely inapplicable to the alleged facts. *Id.* at 1142–43. The plaintiffs in the prior action never sought leave to amend.

Instead, on July 27, 2021, 131 former employees who worked at Cognizant's Tampa location, including the thirteen named plaintiffs from the first action, brought this action against Cognizant in state court. (Doc. 1-3.) Plaintiffs jointly assert one claim for fraudulent concealment or fraudulent misrepresentation (as in the former action) and one standalone claim for medical monitoring. (*Id.*) Plaintiffs' theory of liability remains the same as the putative class action: they seek damages and a medical monitoring fund to treat "the psychological trauma and related physical injuries" Cognizant caused by "deliberately concealing" and "fraudulently misrepresenting" to Plaintiffs the known dangers of long-term and unmitigated content moderation. (*Id.* ¶ 1.) Cognizant removed this action, (Doc. 1), and moves to dismiss the Complaint with prejudice, (Doc. 12). Plaintiffs oppose that motion. (Doc. 15.)

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555) "Nor does a complaint suffice if it tenders

'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 557).

To survive a motion to dismiss for failure to state a claim, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When considering the motion, the court accepts all factual allegations of the complaint as true and construes them in the light most favorable to the plaintiff. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Courts should limit their "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).

For claims that sound in fraud, a plaintiff must satisfy Rule 9(b)'s heightened pleading standard, which requires that "a party must state with particularity the circumstances constituting fraud or mistake." That rule requires a complaint to state: (1) "precisely what statements or omissions were made in which documents or oral representations"; (2) "the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them"; (3) "the content of such statements and the manner in which they misled the plaintiff"; and (4) "what the defendant

obtained as a consequence of the fraud." *In re Galectin Therapeutics, Inc. Secs. Litig.*, 843 F.3d 1257, 1269 (11th Cir. 2016); *see also Infante v. Bank of Am. Corp.*, 680 F. Supp. 2d 1298, 1302–03 (S.D. Fla. 2009) (Gold, J.) ("Simply put, Plaintiffs alleging fraud must plead 'the who, what when, and where [of the fraud.]'" (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997))). This particularity requirement is intended to alert defendants to the "precise misconduct with which they are charged" and to protect them "against spurious charges of immoral and fraudulent behavior." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (quotation omitted).

While leave to amend a complaint is usually freely given, it is not required when amendment would be futile. *See Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (listing "futility of amendment" as one reason a district court may not grant leave to amend).

## III.   ANALYSIS

Cognizant argues that Plaintiffs fail to state a claim either for fraudulent concealment and fraudulent misrepresentation (Count I) or medical monitoring (Count II). As to the former, Cognizant argues that the Complaint lacks sufficient facts to satisfy the particularity requirements of Rule 9(b). Further, Cognizant contends that the fraudulent concealment claim fails because Cognizant owed Plaintiffs no duty to disclose this information and, regardless, a reasonable person exercising due diligence would know

that repeated exposure to graphic content could negatively impact mental health. (Doc. 12 at 6–20.) As for medical monitoring, Cognizant argues that claim fails because Florida law does not recognize medical monitoring for psychological harms and because Plaintiffs fail to adequately allege facts supporting each element. (*Id.* at 20–24.)

### A. Fraudulent Concealment

Under Florida law, a fraudulent concealment claim requires that (1) the defendant "concealed or failed to disclose a material fact"; (2) the defendant "knew or should have known the material fact should be disclosed"; (3) the defendant "knew his concealment of or failure to disclose the material fact would induce the plaintiffs to act"; (4) the defendant "had a duty to disclose the material fact; and (5) the plaintiffs detrimentally relied on the misinformation." *Hess v. Philip Morris USA, Inc.*, 175 So. 3d 687, 691 (Fla. 2015) (quotation omitted); *accord Cote v. R.J. Reynolds Tobacco Co.*, 909 F.3d 1094, 1106 n.6 (11th Cir. 2018). Because the allegations lack the particularity demanded by Rule 9(b) and Plaintiffs identify no special relationship between themselves and Cognizant that requires a duty to disclose under Florida law, the fraudulent concealment claim fails.

### 1. Fraudulent Concealment Was Not Pled with Particularity

A plaintiff must plead a claim for fraudulent concealment with particularity. *See Koski v. Carrier Corp.*, 347 F. Supp. 3d 1185, 1196 (S.D. Fla. 2017) (Scola, J.) (noting that fraudulent concealment claims are subject to Rule 9(b)'s heightened pleading

requirements); *accord Kish v. A.W. Chesterton Co.*, 930 So. 2d 704, 707 (Fla. 3d DCA 2006) (defining "fraud" to include a knowing concealment under Florida law). To satisfy this pleading burden, a plaintiff must allege (1) "precisely what statements or omissions were made in which documents or oral representations"; (2) "the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them"; (3) "the content of such statements and the manner in which they misled the plaintiff"; and (4) "what the defendants obtained as a consequence of the fraud." *Garrett-Alfred*, 540 F. Supp. 3d at 1138 (quoting *Galectin Therapeutics*, 843 F.3d at 1269); *see also Aprigliano v. Am. Honda Motor Co.*, 979 F. Supp. 2d 1331, 1342 (S.D. Fla. 2013) (Altonaga, J.) (explaining that a plaintiff must "'plead the who, what, when, where, and how' of the allegedly fraudulent statements or omissions" (quotation omitted)). As a threshold matter, as this is not a class action, Florida law treats each fraud claim as "factually distinct and requires proof of matters individual to each plaintiff." *See Chateau Cmtys., Inc. v. Ludtke*, 783 So. 2d 1227, 1231 (Fla. 5th DCA 2001); *cf. Black Diamond Props., Inc. v. Haines*, 940 So. 2d 1176, 1178–79 (Fla. 5th DCA 2006). Plaintiffs make no attempt, however, to allege the particulars of fraudulent concealment—the who, what, when, where, and how—as to each of them individually. Therefore, the fraudulent concealment claim is deficient for this reason alone.

Beyond the failure to provide individual allegations for each Plaintiff, the first order of importance in a fraudulent concealment case concerns alleging with particularity the "omissions [that] were made." *Galectin Therapeutics*, 843 F.3d at 1269. While it is true that "Plaintiffs cannot point to one particular statement because an omission is a non-statement," *In re Takata Airbag Prods. Liab. Litig.*, 464 F. Supp. 3d 1291, 1303 (S.D. Fla. 2020) (emphasis omitted) (Moreno, J.), Plaintiffs must still allege specific facts or materials that Cognizant concealed and must plead more than conclusory allegations, *see, e.g.*, *Douse v. Bos. Sci. Corp.*, 314 F. Supp. 3d 1251, 1263 (M.D. Fla. 2018) (Chappell, J.).

Unlike the complaint in the previous lawsuit, Plaintiffs have successfully pleaded "what" and "how" Cognizant allegedly concealed. The Complaint asserts that Cognizant "knew that long-term unmitigated exposure to images and livestreaming of graphic violence and other vile content was known to cause debilitating injuries, including PTSD, to humans." (Doc. 1-3 ¶ 16.) And the Complaint asserts that Cognizant "deliberately conceal[ed] the known dangers of its system of content moderation" by failing to implement Facebook's workplace safety standards, which include "extensive training" and content-moderator information. (Doc. 1-3 ¶¶ 26, 41, 53.) These allegations are sufficient as to the "what" and "how."

But there are no allegations in the Complaint that identify *who* at Cognizant should have warned Plaintiffs or precisely *when* and *where* they should have been warned. *See*

*Aprigliano*, 979 F. Supp. 2d at 1342; *accord Greenberg v. Miami Child.'s Hosp. Rsch. Inst., Inc.*, 264 F. Supp. 2d 1064, 1073 (S.D. Fla. 2003) (Moreno, J.). The Complaint lacks any specifics whatsoever as to "who" at Cognizant fraudulently concealed the relevant information. Regarding the "when" and "where," the Complaint states that Cognizant fraudulently concealed the dangers of its content moderation system "during the onboarding process and throughout the Plaintiffs' employment." (Doc. 1-3 ¶ 39.) While this allegation is an improvement on the previous action's pleading (which lacked any "when" and "where" allegations), it does not meet Rule 9(b)'s requirement that Plaintiffs identify the particular "time and place of each" omission. *Galectin Therapeutics*, 843 F.3d at 1269.

For these reasons, Plaintiffs' fraudulent concealment claim fails to meet Rule 9(b)'s particularity requirement.

### 2. Cognizant Had No Duty to Disclose Dangers to Plaintiffs

In Florida, the "existence of a duty is a legal question." *Joseph v. Chronister*, No. 20-11073, 2021 WL 4739608, at *7 (11th Cir. 2021) (Jordan, J., concurring) (quoting *Limones v. Sch. Dist. of Lee Cnty.*, 161 So. 3d 384, 389 (Fla. 2015)). A fraudulent concealment claim based on omission "must be accompanied by allegations of a special relationship that gives rise to a duty to speak." *Greenberg*, 264 F. Supp. 2d at 1073 (noting that the plaintiffs failed to allege that they had a "fiduciary relationship" with the

defendants); *see also TransPetrol, Ltd. v. Radulovic*, 764 So. 2d 878, 879–80 (Fla. 4th DCA 2000) ("A defendant's knowing concealment or non-disclosure of a material fact may only support an action for fraud where there is a duty to disclose."). "[S]uch duty arises when one party has information that the other party has a right to know because of a fiduciary or other relation of trust or confidence between them." *State v. Mark Marks, P.A.*, 654 So. 2d 1184, 1189 (Fla. 4th DCA 1995) (per curiam).

Plaintiffs allege three potential legal sources for a duty to disclose. The Complaint rests Cognizant's duty to disclose in "a contractual, common law[,] and legal duty to provide a reasonably safe workplace for employees and to provide warning of dangerous working conditions." (Doc. 1-3 ¶ 66.) In other words, a duty to disclose to Plaintiffs "the inherent dangers of its system of content moderation." (*Id.*) Plaintiffs are wrong as a matter of Florida law.

Begin with the alleged contractual duty to disclose. Plaintiffs claim that they were the "intended beneficiaries" of the contract between Cognizant and Facebook. (*Id.* ¶ 35.) Without the contract to review—Plaintiffs never attached it to the Complaint or filed it as an exhibit—it remains difficult to assess their third-party-beneficiary argument. Regardless, Plaintiffs do not point to any authority for the proposition that Cognizant's alleged contractual obligations to a third party could create a "special relationship" between Cognizant and Plaintiffs giving rise to a duty to disclose about the dangers of content

11

moderation. *See Greenberg*, 264 F. Supp. 2d at 1073 (noting the traditional "fiduciary relationship" as an example of a qualifying special relationship but not mentioning contractual obligations to a third party). Moreover, for Plaintiffs to be intended beneficiaries, the goal of the contract must be to "primarily and directly benefit" them. *Williams v. CVT, LLC*, 295 So. 3d 883, 887 (Fla. 2d DCA 2020) (quotation omitted). As the Plaintiffs' allegations illustrate, the contract between Cognizant and Facebook primarily involved business services between the two companies, not a quasi-fiduciary relationship between Cognizant and its employees. (Doc. 1-3 ¶ 12.)

Look next at the alleged common law duty to disclose. Plaintiffs rely on restatements of employment and agency law to surmise that Cognizant had a "common law duty to provide a reasonably safe workplace for employees *and* to provide warning of dangerous working conditions, including to notify employees of the inherent dangers of its system of content moderation." (*Id.* ¶ 36 (citing RESTATEMENT OF EMPLOYMENT LAW § 4.05 (2015); RESTATEMENT (SECOND) OF AGENCY § 492 (1958).) But the Court is unaware of any Florida precedent that cites these Restatement provisions—which are simply summations of generic common law—to require a legal duty on the part of employers to warn their employees of psychological or emotional harm. And Plaintiffs have identified none either.

As for a legal duty, Plaintiffs point to general Occupational Safety and Health Act (OSHA) statutes that allegedly create a legal duty to disclose here. (*Id.* ¶ 37 (citing 29 U.S.C. §§ 651 *et seq.*).) Neither in their Complaint nor in their response do Plaintiffs quote any specific mandatory statutory language to support their argument that the statutes create an affirmative legal duty. *See Mach Mining, LLC v. E.E.O.C.*, 575 U.S. 480, 486 (2015) (noting that mandatory statutory language, unlike precatory language, imposes a legal duty because it "admits of no discretion" (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002))). Rather, for support, they cite without explanation to a section in the United States Code explaining the "purpose and policy" behind OSHA. *See* § 651. In the absence of any Florida-specific legal authority, vague citations to congressional statements on why a particular federal law was enacted does not establish a legal duty of disclosure here.

In sum, Plaintiffs allege no facts establishing that, for purposes of fraudulent concealment, Cognizant and Plaintiffs were in a "fiduciary or other relationship of trust." *Mark Marks, P.A.*, 654 So. 2d at 1189. Thus, Cognizant's fraudulent concealment claim also fails for the independent reason that—as currently alleged—Cognizant had no disclosure duty under Florida law.

### 3. The Dangers from Content Moderation Were Not Obvious to Plaintiffs

Under Florida law, a fraudulent concealment claim requires that the omitted information was not "accessible to the Plaintiffs" through the use of "due diligence to uncover the facts." *Greenberg*, 264 F. Supp. 2d at 1073–74 (dismissing a fraudulent concealment claim where plaintiffs could have discovered the relevant facts by a "simple phone inquiry"); *see also West Brook Isles Partner's 1, LLC v. Commonwealth Land Title Ins. Co.*, 163 So. 3d 635, 639 (Fla. 2d DCA 2015) ("Where there was no active concealment and a party with the exercise of due diligence could have discovered the facts, the statute of limitations is not tolled."). In short, facts are not deliberately concealed when they are reasonably accessible to a plaintiff. *See In re Ford Motor Co. Bronco II Prod. Liab. Litig.*, 982 F. Supp. 388, 396–97 (E.D. La. 1997).

In the first action, the complaint alleged that the dangers of exposure to graphic violence are "well known." *Garrett-Alfred*, 540 F. Supp. 3d at 1139. And that complaint described "with detail the numerous studies and available research on the psychological dangers posed by exposure to graphic images" without any allegation that the named plaintiffs "were unaware that they would be reviewing these kinds of images as content moderators." *Id.* Accordingly, that fraudulent concealment claim failed as a matter of law because "any danger was . . . fully accessible to [the plaintiffs] through due diligence" by their own allegations. *Id.*

14

Here, Plaintiffs remedied the above defects by eliminating reference to the dangers being "well known" and now allege that the numerous studies and research on the psychological dangers posed by exposure to graphic images were not available to them. (*See* Doc. 1-3 ¶¶ 16–21; *id.* ¶ 16 ("These guidance, studies and data were not known or readily available to [sic] like Plaintiffs who were entry level workers with little knowledge of the technology industry.").)

At this stage, Plaintiffs have sufficiently alleged that they were unaware of the dangers of the content they would be viewing and—depending on what they were told in the hiring process and what was publicly available at that time—could not have discovered that fact through due diligence. Cognizant points to a variety of online studies and articles that discuss the dangers to content moderators of viewing graphic content and it argues thus those dangers were well known. (Doc. 12 at 17.) But Plaintiffs respond that all the online articles were published *after* they began working for Cognizant, which means that due diligence would not have uncovered them. And the Complaint—which is accepted as true at this juncture—alleges that Cognizant "hid the dangers of its system of human content moderation from Plaintiffs" by advertising the job as a "prestigious career in high technology" rather than one requiring review of gruesome conduct makes it plausible that Plaintiffs did not have an accurate picture of the job from the outset and a simple online search might not have revealed more. (Doc. 1-3 ¶¶ 13, 44.) Discovery will inform this

inquiry of whether the dangers of content moderation were "public knowledge." *Greenberg*, 264 F. Supp. 2d at 1073–75.

## B. Fraudulent Misrepresentation

Plaintiffs improperly combine a claim for fraudulent concealment and fraudulent misrepresentation into a single count. But even as a standalone, properly pleaded claim, Plaintiffs' allegations fail to state a claim for relief. If pursued in an amended complaint, Plaintiffs must separately plead the two causes of action.

"Under Florida law, fraudulent misrepresentation requires: '(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in *reliance* on the representation.'" *Hearn v. Int'l Bus. Machs.*, 588 F. App'x 954, 956–57 (11th Cir. 2014) (per curiam) (quoting *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010)). Like the fraudulent concealment allegations, the Plaintiffs' fraudulent misrepresentation allegations lack the particularity required by Rule 9(b) and fail under Rule 12(b)(6) as well.

Fraudulent misrepresentation claims must be pled with particularity. *See Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010) (quotation omitted). To meet the standard, the Complaint here needs to "identify (1) the precise statements, documents or misrepresentations made; (2) the time and place of and persons responsible

16

for the statement[s]; (3) the content and manner in which the statements misled [Plaintiffs]; and (4) what [Cognizant] gain[ed] by the alleged fraud." *See W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 86 (11th Cir. 2008) (per curiam).

Once again, outside the class action context, the fraudulent misrepresentation allegations must include details "individual to each plaintiff." *See Ludtke*, 783 So. 2d at 1230. As with fraudulent concealment, the Complaint lacks any individualized allegations for each Plaintiff. It fails for that reason.

Looking beyond that global failure though, the Complaint alleges two specific fraudulent misrepresentations. First, the Complaint alleges that Cognizant "substantially downplayed to new employees the extreme nature of the videos and images to which they would be exposed." (Doc. 1-3 ¶ 42.) This allegation lacks the necessary particularity of "what" exactly Cognizant allegedly said in downplaying the job description. Second, the Complaint alleges that Cognizant "misrepresented the job to Plaintiffs through advertisements as a prestigious career in high technology" when they said applicants would gain knowledge of "leading social media products and community standards," "assist our community and help resolve inquiries empathetically, accurately, and on time," and "make well balanced decisions and [sic] personally driven to be an effective advocate for our community." (*Id.* ¶ 44.) This allegation, though, is not coupled with an allegation that any

17

part of it was false—the first element of a fraudulent misrepresentation claim. And both sets of allegations fail to meet the particularity Rule 9(b) requires: they do not specify "who" made the statements, "when" they said them, "where" they were said, or "how" they mislead Plaintiffs to accept a job at Cognizant. *See Johns Manville, Inc.*, 287 F. App'x at 86 (discussing Rule 9(b)'s particularity requirements in the context of fraudulent misrepresentation).

In their response to Cognizant's motion to dismiss, Plaintiffs attempt to provide additional examples of Cognizant's fraudulent misrepresentations. But the examples should have been alleged in the Complaint, not the response. For example, Plaintiffs respond to the motion by recounting how Cognizant allegedly advertised the content moderation position as one involving "only review [of] written and visual pictures" but that Plaintiffs were "forced to witness live videos of vile horrors such as live suicides, multiple school shootings, adulting raping and killing babies/children, child abuse, bestiality, satanic rituals, drug overdoses, cannibalism, self-harm, mutilation, and animal abuse such as videos of a man taking a baseball bat to a litter of puppies boasting how good it feels to slaughter them." (Doc. 15 at 9; *id.* at 8.) Separately, the response states that "Cognizant told [Plaintiffs] that, per Facebook guidelines, it would regulate volume of workload to a maximum four hours/day. Cognizant then increased the number of hours to 8 hours/40 hours/week . . . resulting in severely exposing plaintiffs to the early and rapid onset of

PTSD." (*Id.* at 10.) But these examples appear nowhere in the Complaint. And even if they did, they lack the requisite specificity—the who and when—to satisfy Rule 9(b). *See Greenberg*, 264 F. Supp. 2d at 1073.

Finally, the two examples fail to explain how those statements were false, that Cognizant knew they were false, or that the Plaintiffs materially relied on the statements when accepting employment with Cognizant. *See Hearn*, 588 F. App'x at 956–57.

For these reasons, Plaintiffs' fraudulent misrepresentation claim is due to be dismissed as well.

### C. Medical Monitoring

Florida law allows courts to establish medical monitoring schemes in some mass tort actions before the party seeking relief has developed identified injuries. *See, e.g., Petito v. A.H. Robins Co.*, 750 So. 2d 103, 104 (Fla. 3d DCA 1999). Such claims ordinarily arise in cases where plaintiffs have diagnosable health conditions resulting from exposure to hazardous or toxic substances. *See, e.g., Wyeth, Inc. v. Gottlieb*, 930 So. 2d 635, 637 (Fla. 3d DCA 2006) (class action against manufacturer of hormone replacement therapy drug); *Petito*, 750 So. 2d at 104 (class action against manufacturers of pharmaceutical weight loss products); *Perez v. Metabolife Int'l, Inc.*, 218 F.R.D. 262, 264 (S.D. Fla. 2003) (Huck, J.) (suit against manufacturer of over-the-counter dietary supplement); *Jerue v. Drummond Co.*, No. 8:17-cv-587, 2017 WL 10876737, at *14 (M.D. Fla. 2017) (Kovachevich, J.) (suit

against mining company for exposure to radiation from phosphate). And while Florida courts describe medical monitoring as a "cause of action," it appears more like a pleading requirement for a remedy in these kinds of mass tort actions. *See, e.g.*, *Petito*, 750 So. 2d at 105.

Importantly, Plaintiffs fail to identify any Florida authority to extend medical monitoring as a standalone claim to redress mental health conditions like post-traumatic stress disorder. *See Garrett-Alfred*, 540 F. Supp. 3d at 1142–43 (explaining that it remains unclear "that Florida law permits a medical monitoring regime to be created for mental health conditions like PTSD or trauma"). In the absence of any state authority, a federal court *may* choose to attempt to forecast state law using "whatever might lend it insight, including 'relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand.'" *Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc.*, 420 F.3d 1317, 1326 n.5 (11th Cir. 2005) (quoting *McKenna v. Ortho Pharm. Corp.*, 622 F.2d 657, 663 (3d Cir. 1980)). That said, "considerations of comity and federalism" dictate that a federal court should "proceed gingerly when venturing into uncharted waters of state substantive law." *Guarino v. Wyeth, LLC*, 719 F.3d 1245, 1251 (11th Cir. 2013). This Court "decline[s] to invent a novel basis" for medical monitoring under Florida law today "given the complete lack of supporting Florida caselaw." *City of*

*Miami v. Bank of Am. Corp.*, 800 F.3d 1262, 1289 (11th Cir. 2015), *vacated and remanded on other grounds by Bank of Am. Corp. v. City of Miami*, 137 S. Ct. 1296 (2017).

But even assuming Florida law reaches a medical monitoring claim under these facts, Plaintiffs have failed to state a valid claim here. For medical monitoring to apply, Plaintiffs must allege (1) exposure to greater than normal background levels (2) of "a proven hazardous substance" (3) caused by Cognizant's negligence, (4) and "as a proximate result of the exposure," Plaintiffs have "a significantly increased risk of contracting a serious latent disease," (5) "a monitoring procedure exists that makes the early detection of the disease possible," (6) "the prescribed monitoring regime is different from that normally recommended in the absence of the exposure," and (7) "the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles." *Gottlieb*, 930 So. 2d at 640 (quoting *Petito*, 750 So. 2d at 106–07).

Plaintiffs fail to allege facts rendering the above elements plausible. Most importantly, they allege no negligence by Cognizant at all—unlike the negligence claim they asserted against Facebook in the earlier action. (*See* Doc. 1-3 ¶¶ 63–92.) Next, Plaintiffs allege that they already suffer from psychological injuries due to Cognizant's intentional conduct, not that they have a serious *latent* disease. *See Gottlieb*, 930 So. 2d at 640; (Doc. 1-3 ¶¶ 59, 81; Doc. 15 at 1 ("[A]ll of [the 131 Plaintiffs] have been diagnosed

with PTSD, C-PTSD and related mental health comorbidities.")). Similarly, the Complaint lacks factual allegations—as opposed to legal conclusions—making it plausible that a monitoring regime exists rendering early detection possible of these latent mental health conditions, that such a regime is different for Plaintiffs than others of the community exposed to trauma, and that this kind of regime is reasonably necessary according to contemporary scientific principles (which is a different inquiry than whether it is reasonably necessary for all individuals suffering from similar conditions). The many kinds of treatment identified in the Complaint undoubtedly benefit individuals suffering from these sorts of conditions, (Doc. 1-3 ¶ 86), but Florida law requires that the monitoring scheme be unique to those exposed to the particular hazardous substance.

Finally, Plaintiffs have not alleged that they have been exposed to a "proven hazardous *substance*"—meaning "material with particular physical characteristics" or a physical material. *Substance*, CAMBRIDGE DICTIONARY, https://dictionary.cambridge.o rg/us/dictionary/english/substance (last visited June 10, 2022); *see, e.g.*, *Coffie v. Fla. Crystals Corp.*, 460 F. Supp. 3d 1297, 1313 (S.D. Fla. 2020) (Smith, J.). Nor have Plaintiffs identified legal authority in Florida holding that graphic videos and images qualify as a "proven hazardous substance" for medical monitoring purposes.

Because there is no Florida authority supporting extension of medical monitoring to facts as alleged here, amendment of Count II would be futile under these circumstances.

*See Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999); *see also Bryant*, 252 F.3d at 1163.

## IV.   CONCLUSION

Plaintiffs' fraudulent concealment and fraudulent misrepresentation claim fails to comply with Rule 9(b) as to each individual Plaintiff and is dismissed on that basis. Additionally, the fraudulent concealment claim fails because—as currently alleged— Cognizant had no duty to disclose the dangers of content moderation to Plaintiffs. Plaintiffs also fail to state a claim for fraudulent misrepresentation. Finally, Plaintiffs fail to state a claim for medical monitoring because Florida courts have not applied medical monitoring to claims based on psychological harm and because Plaintiffs fail to adequately allege the elements of a medical monitoring claim.

Accordingly, the following is **ORDERED**:

1. Defendant's Motion to Dismiss (Doc. 12) is **GRANTED**.

2. Plaintiffs' claim for fraudulent concealment and fraudulent misrepresentation against Defendant is **DISMISSED without prejudice**.

3. Plaintiffs' claim for medical monitoring against Defendant is **DISMISSED with prejudice**.

4. If Plaintiffs elect to proceed in this action, they must file an amended complaint no later than June 24, 2022.

**ORDERED** in Tampa, Florida, on June 10, 2022.

Kathryn Kimball Mizelle
United States District Judge